**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

Plaintiff,

v. 1:25-cv-1022 (AMN/MJK)

$50,000.00 in U.S. Currency,

Defendant.

---

**APPEARANCES:** **OF COUNSEL:**

**UNITED STATES ATTORNEY'S OFFICE**
**NORTHERN DISTRICT OF NEW YORK**
445 Broadway
Room 218
Albany, New York 12207

**NICHOLAS C.E. WALTER, ESQ.**

100 S. Clinton Street
Syracuse, New York 13261
*Attorneys for Plaintiff*

**JEFFREY BROWN, ESQ.**

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

On July 31, 2025, plaintiff United States of America ("Plaintiff") commenced this action via Verified Complaint for forfeiture *in rem* pursuant to 21 U.S.C. § 881(a)(6) and Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). Dkt. No. 1 at ¶¶ 1-2. Plaintiff seeks the forfeiture of $50,000.00 ("Defendant Currency") as property traceable to proceeds from offenses in violation of 21 U.S.C. § 841. Dkt. No. 1 at ¶ 1. Presently before the Court is Plaintiff's Motion for Default Judgment and Final Order of Forfeiture under Rule 55(b)(2) of the Federal Rules of Civil Procedure and

General Order #15 of the United States District Court for the Northern District of New York. Dkt. No. 10 ("Motion"). For the following reasons, Plaintiff's Motion is granted.

## II. BACKGROUND

### A. Factual Allegations[1]

Plaintiff alleges that this matter arises from an investigation beginning in May 2022 into a drug trafficking organization ("DTO") that was "selling cocaine and counterfeit oxycodone pills containing fentanyl in the Capital Region of New York State." Dkt. No. 1 at ¶ 8. As part of this investigation, the Drug Enforcement Administration ("DEA") partnered with other federal and local law enforcement agencies to conduct surveillance of a stash house associated with the DTO located on Western Avenue in Guilderland, New York. *Id.* at ¶ 9. Through that surveillance, agents identified Jabree Jones ("Jones") as a key individual in the DTO by observing Jones access the stash house on multiple occasions and by conducting "controlled buys of cocaine and counterfeit pills containing fentanyl from Jones." *Id.* at ¶¶ 11-12.

On May 23, 2023, the United States Probation Office ("Probation"), with assistance from the DEA, the Glenville Police Department, the Schenectady County Sheriff's Department, and the Bureau of Alcohol, Tobacco, Firearms and Explosives, searched both Jones' person and his residence on Sacandaga Road in Glenville, New York. *Id.* at ¶ 14. During the search, Probation Officers found and seized the Defendant Currency from a closet in a child's bedroom. *Id.* at ¶ 16;

---

[1] Unless otherwise noted, the Court draws these facts from the Verified Complaint. *See* Dkt. No. 1 at 7. The allegations therein are deemed admitted and assumed to be true for purposes of this Motion. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

*see also id.* at 9.[2] Law enforcement also found and seized various pieces of jewelry[3] and a set of keys to the stash house. *Id.* at ¶¶ 17-18.

Later that same day, Probation executed a search warrant at the stash house, using the keys found in Jones' residence to unlock the doors. *Id.* at ¶ 19. In a corner of the living room, Probation agents discovered a black safe containing the following: "(1) approximately 737.50 grams of cocaine, a chunk of which was located on a plate and the remaining inside two clear plastic baggies; (2) approximately 3,729 counterfeit oxycodone pills, positively identified as fentanyl; (3) a glassine bag consisting of approximately 3.793 grams of identified fentanyl; (4) several bags containing approximately 23,907 tablets, positively identified as methamphetamine; (5) twenty-eight firearms; and (6) ammunition." *Id.* at ¶ 20-21; *see also id.* at 11-12.

Plaintiff asserts that Jones told Probation that he was employed by NY Sportswear in Schenectady, New York. Dkt. No. 1 at ¶ 22. But Plaintiff also asserts that agents never once saw Jones at that location during their surveillance and that Jones provided them with pay stubs that appeared to be counterfeits. *Id.* Agents also executed a federal search warrant on Jones' phone that revealed communications in which Jones discussed how to acquire counterfeit pay stubs. *Id.*

On January 21, 2025, Jones was indicted for offenses in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B) (possession with intent to distribute and distribution of controlled substances) and 846 (conspiracy to commit the same), and §§ 18 U.S.C. 924(c)(1)(A) & (B) (possession of a machine-gun in furtherance of a drug trafficking offense), 922(o) (possession of a machine-gun), and 922(g)(1) (possession of firearms by a prohibited person). *Id.*

---

[2] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

[3] This Court issued a Final Order of Forfeiture as to that jewelry on August 15, 2024. *United States v. Assorted Jewelry, VL: $39,100.00*, No. 23-CV-1435, 2024 WL 3827668 (N.D.N.Y. Aug. 15, 2024).

at ¶ 24. On August 26, 2025, Jones waived indictment and pled guilty to one count of conspiracy to possess with intent to distribute controlled substances, one count of possession with intent to distribute controlled substances, and one count of possession of firearms in furtherance of drug trafficking crimes. *United States v. Jones*, Case No. 1:25-cr-00020-AMN-1 (N.D.N.Y.), Dkt. No. 17 at 1 (plea agreement). This Court subsequently sentenced Jones to twenty-five years imprisonment. *Id.* at Dkt. No. 27 (judgment).

Jones has a prior federal conviction for conspiracy to violate the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d). Dkt. No. 1 at ¶ 23. Plaintiff also states that Jones has prior New York State felony convictions for third degree criminal possession of a controlled substance with intent to sell and second degree criminal possession of a weapon. *Id.*

**B. Procedural History**

On July 31, 2025, Plaintiff filed its Verified Complaint for forfeiture *in rem*, seeking a declaration that the Defendant Currency be forfeited and condemned to the use and benefit of the United States. Dkt. No. 1. That same day, the Clerk of Court issued a warrant for arrest of the Defendant Currency, Dkt. No. 2, which was executed on August 7, 2025, Dkt. No. 5.

Plaintiff served copies of the Verified Complaint, warrant for arrest, and notice to potential claimants via certified and regular mail to Jabree Jones at his place of incarceration and to the office of Mr. Jones' attorney John S. Wallenstein on August 4, 2025. Dkt. No. 3; Dkt. No. 10-2 at ¶ 3. On August 5, 2025, and for thirty consecutive days thereafter, Plaintiff also published public notice of this action on an official government forfeiture website, www.forfeiture.gov. *See* Dkt. No. 6; Dkt. No. 10-2 at ¶ 4.

On October 10, 2025, Plaintiff requested an entry of default and submitted a supporting affidavit. Dkt. Nos. 7, 7-1. The Clerk entered default of the Defendant Currency on October 15,

2025. Dkt. No. 8. Plaintiff then filed the instant Motion for Default Judgment on October 23, 2025. Dkt. No. 10. Plaintiff served copies of the corresponding text notice (setting the motion response hearing deadline), as well as copies of the Motion papers, Dkt. Nos. 10 through 10-6, by certified and regular mail to Jabree Jones at his place of incarceration and the office of John S. Wallenstein. Dkt. No. 11.

The last date for potential claimants to file a verified claim was October 4, 2025. Dkt. No. 6; Dkt. No. 10-2 at ¶ 5. No one has filed a verified claim for the Defendant Currency. *See generally* Docket Sheet.

## III. STANDARD OF REVIEW

### A. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). The first step is governed by Rule 55(a), which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *Id.* (quoting Fed. R. Civ. P. 55(a)); *see also* N.D.N.Y. L.R. 55.1 (setting forth affidavit requirements). The second step "requires the plaintiff to seek a judgment by default under Rule 55(b)." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 505 (2d Cir. 2011).

"Before entering a default judgment, the court 'must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for [a] default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a

matter of law.'" *Windward Bora, LLC v. Brown*, No. 21-cv-03147, 2022 WL 875100, at *2 (E.D.N.Y. Mar. 24, 2022) (alteration in original) (quoting *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-cv-6722, 2020 WL 1694356, at *4 (E.D.N.Y. Apr. 7, 2020)). Additionally, "[t]here must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (citations omitted).

While a court may enter a default judgment if the requisite standard is satisfied, the Second Circuit has cautioned that default judgments "are generally disfavored and are reserved for rare occasions[.]" *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "Because we have 'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . we have characterized a district court's discretion in proceeding under Rule 55 as 'circumscribed.'" *Mickalis*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron*, 10 F.3d at 95; and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)).

### B. Forfeiture *in Rem*

"*In rem* forfeiture actions are governed by Rule G of the [Supplemental Rules] and the Civil Asset Forfeiture Reform Act of 2000," 18 U.S.C. § 981 *et seq. See United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014). "The Federal Rules of Civil Procedure also apply to [forfeiture *in rem*] proceedings except to the extent that they are inconsistent with the[] Supplemental Rules." Supp. R. A(2); *accord United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-CV-5567, 2015

WL 5178121, at *4 (E.D.N.Y. Sept. 2, 2015), *aff'd sub nom. United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 Fed. App'x 17 (2d Cir. 2017).

Under Supplemental Rule G, a complaint for forfeiture *in rem* must:

a) be verified;

b) state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the defendant property, and venue;

c) describe the property with reasonable particularity;

d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;

e) identify the statute under which the forfeiture action is brought; and

f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Supp. R. G(2). ). Furthermore, "[i]f the defendant is not real property . . . the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control." Supp. R. G(3)(b)(i).

Once the government has commenced a forfeiture *in rem* action, a claimant "who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending." Supp. R. G(5)(a)(i); *accord Vazquez-Alvarez*, 760 F.3d at 197. The claimant must file their claim "not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint." *See* 18 U.S.C. § 983(a)(4)(A); *accord* Supp. R. G(5)(a)(ii). "A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." Supp. R. G(5)(b). However, "[n]o complaint may be dismissed on the

ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

A "fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Supplemental Rule G goes further, requiring Plaintiff to send notice to "any person who reasonably appears to be a potential claimant on the facts known to the [G]overnment before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)," Supp. R. G(4)(b)(i), and notice by publication, which is required unless certain conditions are met, can be effectuated by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days," Supp. R. G(4)(a)(iv)(C). "The notice must be sent by means reasonably calculated to reach the potential claimant." Supp. R. G(4)(b)(iii)(A).

"[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

## IV. DISCUSSION

### A. Rule 55

The Court first addresses whether Plaintiff has satisfied the procedural requirements of Rule 55 of the Federal Rules of Civil Procedure. On October 10, 2025, Plaintiff requested a clerk's entry of default under Rule 55(a) and General Order #15. Dkt. No. 7. In the accompanying

affidavit, Plaintiff affirmed the following: (1) "[a]ll known potential claimants were served"; (2) "public notice of this action was published on an official government forfeiture site . . . for thirty consecutive days"; (3) Plaintiff "believes it has taken reasonable steps to attempt to provide notice of this action to all known, and unknown, potential claimants[;] [s]uch claimants have been served with the pleadings in this action, and failed to plead or otherwise defend the action, as provided by the Supplemental Rules"; (4) "[n]either a verified claim nor an answer has been filed in this action, and the last date for potential claimants to file a claim" had passed; and (5) "no person thought to have an interest in the Defendant Currency is an infant, incompetent, or presently engaged in military service." Dkt. No. 7-1 at ¶¶ 3-7. Thus, Plaintiff properly obtained the Clerk's entry of default. Dkt. No. 8.

Plaintiff then moved for default judgment pursuant to Local Rule 55.2(b), attaching the Clerk's certificate of entry of default, Dkt. No. 10-5, a proposed form of default judgment, Dkt. No. 10-3, a copy of the pleading to which no response has been made, Dkt. No. 10-6, and a supporting affidavit, Dkt. No. 10-2. Plaintiff has therefore complied with the procedural requirements of Rules 55 and Local Rule 55.2.

### B. Supplemental Rule G

The Court next examines whether Plaintiff has complied with the requirements of the Supplemental Rules. *See Vazquez-Alvarez*, 760 F.3d at 197. In compliance with Supplemental Rule G(3)(b)(i), the Clerk issued a warrant to arrest the Defendant Currency, which was duly executed by the U.S. Marshals. Dkt. Nos. 2, 5.

Plaintiff also complied with the notice requirements of Supplemental Rule G(4). First, Plaintiff published public notice of the action on an official government forfeiture website, www.forfeiture.gov, from August 5, 2025 through September 3, 2025, in satisfaction of

Supplemental Rule G(4)(a). *See* Dkt. No. 7-1 at ¶ 4; Dkt. No. 10-2 at ¶ 4. Second, in satisfaction of Supplemental Rule G(4)b, Plaintiff provided direct notice to all known potential claimants by means reasonably calculated to reach the potential claimants. Specifically, Plaintiff served copies of the Verified Complaint, warrant for arrest of articles *in rem*, and notice to potential claimants on Jabree Jones via certified and regular mail at his place of incarceration. Dkt. No. 10-2 at ¶ 3(a); Supp. R. G(4)(b)(iii)(c). Plaintiff also served the same on Jabree Jones' attorney John S. Wallenstein by certified and regular mail to his law office. Dkt. No. 10-2 at ¶ 3(b). Such service is sufficient for Supplemental Rule G(4). *See United States v. Starling*, 76 F.4th 92, 96 n.2 (2d Cir. 2023) ("The government need not provide formal service of process in a civil forfeiture proceeding; it must only give notice 'to any person who reasonably appears to be a potential claimant on the facts known to the government,' and it may do so by any 'means reasonably calculated to reach the potential claimant.'" (quoting Supp. R. G(4)(b)(i), (iii)(A))).

Lastly, Plaintiff must satisfy the requirements of Supplemental Rule G(2). The Court finds the following as to the Verified Complaint: (1) the Complaint is verified in satisfaction of Supplemental Rule G(2)(a), Dkt. No. 1 at 7; (2) it states the grounds for subject matter jurisdiction, *in rem* jurisdiction over the Defendant Currency, and venue in satisfaction of Supplemental Rule G(2)(b), *id.* at ¶¶ 5-7; (3) it describes the property with reasonable particularity in satisfaction of Supplemental Rule G(2)(c), *id.* at ¶¶ 3, 16; (4) it states the Defendant Currency's location when seizure occurred and when the action was filed in satisfaction of Supplemental Rule G(2)(d), *id.* at ¶¶ 4, 16; and (5) it identifies the statute under which the forfeiture action is brought in satisfaction of Supplemental Rule G(2)(e), *id.* at ¶ 1.

**C. Sufficiency of the Verified Complaint**

The Verified Complaint must also "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f); *see also Mickalis*, 645 F.3d at 137 ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (alterations, citation, and internal quotation marks omitted). To meet its burden of proof, the Government must "establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). Accordingly, the Government must plead facts that support a reasonable belief that it could "establish that there was a substantial connection between [Defendant Currency] and the offense" on which Plaintiff's theory of forfeiture is premised. *See* 18 U.S.C. § 983(c)(3); *see also United States v. Two Hundred and Eighty Thousand Dollars and Zero Cents, More or Less, in U.S. Currency*, 20-CV-4442, 2021 WL 2980540, at *3 (E.D.N.Y. July 14, 2021).

Plaintiff premises its action on 21 U.S.C. § 881(a)(6), which provides for the forfeiture of "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter[.]" *See* Dkt. No. 1 at ¶ 1. Specifically, Plaintiff alleges that the Defendant Currency constitutes proceeds traceable to narcotics trafficking in violation of 21 U.S.C. §§ 841 and 846. *See id.* at ¶¶ 1, 12-21, 24. As such, Plaintiff must plead facts supporting a reasonable belief that it could "establish that there was a substantial connection between [Defendant Currency] and the [alleged violation of 21 U.S.C. §§ 841 and 846]." *See* 18 U.S.C. § 983(c)(3).

The Court finds that Plaintiff has sufficiently pled such a substantial connection. First, the Defendant Currency comprises an exceptionally large sum of cash. *See United States v. Gonzalez*, 922 F.2d 1044, 1056 (2d Cir. 1991), *cert. denied*, 502 U.S. 1014 (1991) (holding that large amounts of cash tend to demonstrate narcotics trafficking activity) (citations omitted). Second, Plaintiff alleges that law enforcement found and seized the Defendant Currency while executing a search of Jabree Jones' home, premised on surveillance in which Jones was observed accessing a known stash house and conducting transactions involving cocaine and counterfeit pills containing fentanyl. Dkt. No. 1 at ¶¶ 8-16. And Plaintiff alleges that a set of keys found during that same search locked and unlocked the doors to the stash house, which contained a safe holding large amounts of various narcotics as well as firearms and ammunition. *Id.* at ¶¶ 18-21. Together with the amount of cash involved, that is enough to establish a substantial connection between the Defendant Currency and narcotics trafficking. *See United States v. $11,640.00 in U.S. Currency*, No. 7:13-CV-184, 2014 WL 4217389, at *6 (N.D.N.Y. Aug. 25, 2014) (holding that the Government "need not prove that there is a substantial connection between the property and any specific drug transaction. Instead, the Government may prove more generally, based on a totality of the circumstances, that the property is substantially connected to narcotics trafficking.") (citation and internal quotation marks omitted).

Plaintiff also pleads facts suggesting that the Defendant Currency was not traceable to any legitimate employment. While Jones claimed to have been employed by a sportswear company in Schenectady, New York, Plaintiff alleges that surveilling agents never observed Jones at that company, the paystubs he provided to agents were counterfeits, and that Jones had discussed obtaining counterfeit paystubs using his phone. Dkt. No. 1 at ¶ 22. Thus, because it appears that Jones had no legitimate source of income at the time of the seizure, "there is 'a great disparity

between the amount of cash seized and its carrier's legitimate income,' which further supports an inference of illegal activity." *United States of America, v. $41,910.00 in U.S. Currency*, No. 3:25-CV-01093, 2026 WL 2475299, at *6 (N.D.N.Y. Aug. 24, 2026) (quoting *United States v. U.S. Currency in the Sum of One Hundred Eighty-Five Thousand Dollars ($185,000)*, 455 F. Supp. 2d 145, 155 (E.D.N.Y. 2006)).

Thus, Plaintiff has met its burden to establish that the Defendant Currency is subject to forfeiture. *See* 18 U.S.C. §§ 983(c)(1), 983(c)(3); *see also* Supp. R. G(2)(f); 18 U.S.C. § 981(a)(1)(A). Accordingly, Plaintiff's Motion is granted.

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Motion for Default Judgment and Final Order of Forfeiture, Dkt. No. 10, is **GRANTED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order, as well as the forthcoming Final Order of Forfeiture, on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 2, 2026
Albany, New York

Anne M. Nardacci
Anne M. Nardacci
U.S. District Judge